| | |
|---|---|
| **UNITED STATES DISTRICT COURT** <br> **MIDDLE DISTRICT OF PENNSYLVANIA** | |
| LISA LOUGHNEY <br> AS ADMINISTRATOR OF THE ESTATE <br> OF RYAN LYNADY <br>         PLAINTIFF <br> V. <br><br> LACKAWANNA COUNTY <br> 123 WYOMING AVENUE <br> SCRANTON, PA 18503 <br><br> CORRECTIONAL CARE, INC. <br> 4101 BIRNEY AVENUE <br> MOOSIC, PA 18507 <br><br> PATRICK O'MALLEY <br> 123 WYOMING AVENUE <br> SCRANTON, PA 18503 <br><br> LAUREEEN CUMMINGS <br> 123 WYOMING AVENUE <br> SCRANTON, PA 18503 <br><br> JERRY NOTARIANNI <br> 123 WYOMING AVENUE <br> SCRANTON, PA 18503 <br><br> EDWARD ZALOGA <br> 4101 BIRNEY AVENUE <br> MOOSIC, PA 18507 <br><br> TIM BETTI <br> 1371 N. WASHINGTON AVE. <br> SCRANTON, PA 18509 | CIVIL ACTION - LAW <br><br> JURY TRIAL DEMANDED <br><br> NO. 4:19-cv-1101 |

1

| | |
|---|---|
| SATISH MALLIK, MD<br>1371 N. WASHINGTON AVE.<br>SCRANTON, PA 18509<br><br>JOHN/JANE DOE<br>1371 N. WASHINGTON AVENUE<br>SCRANTON, PA 18509<br>              DEFENDANTS | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

AND NOW, comes Plaintiff, Lisa Loughney, acting both in her capacity as administratrix of the Estate of Ryan Lynady and individually, by and through her Attorneys, Comerford Law, who files this Complaint, averring as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff rights protected by the 4th, 8th, and 14th Amendments to the United States Constitution and under Pennsylvania State Law.

2. Jurisdiction is vested in this Court under the provisions of 28 U.S.C.A. §§ 1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate State Law claims.

3. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b) because it is where all parties reside and where the events complained of herein occurred.

### PARTIES

4. Plaintiff incorporates prior paragraphs 1-3 as if the same were set forth herein.

5. Plaintiff, Lisa Loughney, who brings this suit individually and in her capacity as administratrix of the Estate of Ryan Benjamin Lynady ("the Estate"), is a citizen of the United States, who at all times

2

relevant to this cause of action resided in the Middle District of Pennsylvania.

6. This matter is brought as a Survival Action on behalf of the Estate, and, to the extent that this Complaint contains claims under Pennsylvania Law, is brought by virtue of, *inter alia*, 42 Pa. C.S.A. § 8302 and claims all damages encompassed thereby.

7. This matter is also brought as a wrongful death action on behalf of Ryan Benjamin Lynady's mother, the Individual Plaintiff, and his remaining biological children, and, to the extent this Complaint contains claims under Pennsylvania Law, is brought by virtue of, *inter alia*, 42 Pa. C.S.A. § 8301 and claims all damages encompassed thereby.

8. Ryan Benjamin Lynady ("Decedent") was a United States citizen who died on July 27, 2018, as a result of the actions and inactions of Defendants as described below. On March 15, 2019, the Register of Wills of Lackawanna County, Pennsylvania, granted Letters of Administration for the Estate to Lisa Loughney.

9. Defendant, Lackawanna County, is a government entity of the Commonwealth of Pennsylvania, which has offices located at 123 Wyoming Avenue, Scranton, Pennsylvania 18503, and owns, operates, manages, directs, creates policy for, and controls the Lackawanna County Prison ("the Prison") and its employees.

10. Defendant, Correctional Care, Inc. ("CCI"), is a Business Corporation registered under the laws of the Commonwealth of Pennsylvania. At all times relevant herein, Defendant CCI was under contract with Defendant County to provide medical services to inmates at the Prison. Defendant CCI is being sued in its capacity as a Pennsylvania Corporation, its supervisory capacity as an employer, and as a policymaker and government actor, acting under color of state law.

11. Individual Defendant, Commissioner Patrick O'Malley, is an elected Commissioner of Lackawanna County, who regulated, managed, employed, and implemented the customs, policies, practices, and employees of the Prison at all times relevant to this Complaint.

3

Defendant O'Malley acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant O'Malley is being sued in his individual, supervisory, policymaking, and all other official capacities as a Commissioner.

12. Individual Defendant, Commissioner Laureen Cummings, is an elected Commissioner of Lackawanna County, who regulated, managed, employed, and implemented the customs, policies, practices, and employees of the Prison at all times relevant to this Complaint. Defendant Cummings acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant Cummings is being sued in her individual, supervisory, policymaking, and all other official capacities as a Commissioner.

13. Individual Defendant, Commissioner Jerry Notarianni, is an elected Commissioner of Lackawanna County, who regulated, managed, employed, and implemented the customs, policies, practices, and employees of the Prison at all times relevant to this Complaint. Defendant Notarianni acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant Notarianni is being sued in his individual, supervisory, policymaking, and all other official capacities as a Commissioner.

14. Individual Defendant, Edward Zaloga, D.O., is a doctor of osteopathy, registered under the laws of the Commonwealth of Pennsylvania. Defendant Zaloga owns, operates, controls, maintains, and is President of Defendant CCI. At all times relevant herein, Defendant Zaloga was acting under the command and authority of Defendant County and was acting under the color of state law and pursuant to the custom, policy, contract, and/or practice of Defendants County and CCI. Defendant Zaloga is being sued in his individual capacity, his supervisory capacity as an employer, and as a policymaker for Defendants County and CCI.

15. Individual Defendant, Tim Betti is Warden of the Prison. At all times relevant herein, Defendant Betti was employed by Defendant County and was acting under Color of State Law, pursuant to the custom, policy, or practice of Defendant County. Defendant Betti is

being sued in his individual, supervisory, policymaking, and all other official capacities as Warden of the Prison.

16. Individual Defendant Satish Mallik, M.D., is a medical doctor, registered under the laws of the Commonwealth of Pennsylvania. Defendant Mallik contracts with Defendant CCI to provide psychiatric care at the Prison. At all times relevant herein, Defendant Mallik was acting under the command and authority of Defendants County and CCI and was acting under the color of state law and pursuant to the custom, policy, contract, and/or practice of Defendants CCI and County. Defendant Mallik is being sued in his individual and official capacities.

17. John/Jane Does I-X ("John Doe Defendants") are agents and/or employees of Defendants County and CCI whose identities are not yet known, but through discovery will become known, and who were involved in the conduct herein described against Plaintiff. John Doe Defendants are being sued in their individual and official capacities.

18. At all times relevant to this Complaint, all individually named Defendants and John Doe Defendants were agents, servants, and/or employees of their respective municipality, governmental entity, or corporation functioning as a government entity, as described above, acting within the scope of their employment and acting under Color of State Law.

19. At all relevant times to this Complaint, all Defendants acted in concert and conspiracy with one another to improperly and/or unlawfully, seize, assault, neglect, fail to treat, mistreat, and inflict emotional distress on Decedent and otherwise deprive Decedent of rights guaranteed by the laws of both the United States' Constitution, the Constitution of the Commonwealth of Pennsylvania and the statutory rights guaranteed under 42 Pa. C.S.A. § 1983.

20. The Defendants acted willfully, deliberately, maliciously, and/or with reckless disregard of Decedent's Constitutional and Statutory Rights.

21. Defendants engaged in the aforesaid conduct for purposes of violating Decedent's Constitutional rights.

# FACTS

## Background Facts

22. Plaintiff incorporates be reference paragraphs 1-21 of this Complaint as if set forth fully herein.

23. On or about December 15, 2009, Defendant County entered into a Comprehensive Health Services Agreement ("the Agreement") with Defendant CCI for the provision of all medical treatment and services to inmates, detainees, and prisoners at the Prison.

24. In entering into this Agreement, Defendant CCI voluntarily undertook to engage in a traditional government function in lieu of the government itself performing that function.

25. Under this Agreement, Defendant County specifically delegated its legal responsibility to provide medical treatment to these individuals, sufficient to pass Constitutional muster under the United States Constitution, to Defendant CCI.

26. Under this Agreement, Defendant CCI agreed to render services commensurate with then current levels of care being provided by Defendant County and to act in accordance with the customs and practices of Defendant County.

27. Under this Agreement, Defendant CCI is obligated to provide outside hospital care, where required, to inmates, detainees, and prisoners.

28. Under this Agreement, Defendant CCI must evaluate all inmates, detainees, and prisoners prior to being booked into the Prison, and must make appropriate accommodations or changes for inmates with preexisting medical conditions.

29. Under this Agreement Defendant CCI is responsible for staffing the Prison with sufficient medical personnel, and the Prison was responsible for screening Defendant CCI's employees who would be working in the Prison.

30. Under this Agreement, Defendant County paid the costs of care, administrative expenses, and compensation to Defendant CCI.

31. Under this Agreement, Defendant CCI agreed to comply with all civil rights laws in effect and agreed to comply with all right-to-know laws.

32. This Agreement was scheduled to end on December 14, 2012, but on September 12, 2012, Defendant County and Defendant CCI entered into an Amendment ("the Amendment") to the Agreement which extended the Agreement through December 14, 2017. The Agreement was ultimately renewed such that it – or its equivalent replacement – was in place at the time of Decedent's death.

33. The Amendment specifically reaffirmed Defendant County's right to ask Defendant CCI to use alternate providers of goods and services. This was a guise indicative of Defendant County and Defendant CCI's policy and custom of using cheaper, ineffective, and dangerous care rather than care adequate to treat detainees' serious medical needs. This Amendment also permits Defendant CCI to deny or limit care on a political basis, under the guise of the right to use alternative providers and/or to deny services.

34. Additionally, the nature of the bidding process through which the contract for medical care at the prison is awarded provides incentive for Defendant CCI to deny services in order to keep cost low, which ensures that the contract will continue to get renewed.

**History of the Present Cause of Action**

35. Plaintiff incorporates prior paragraphs 1-34 as if the same were set forth herein.

36. On or about June 23, 2018, at approximately 1:45 a.m., Decedent entered the Prison on new criminal charges in regard to which Decedent was subject to pretrial detention.

37. On that date and time, John and/or Jane Doe, an agent of Defendant CCI, conducted a medical intake screening on Decedent.

38. Records from that screening indicate that Decedent was prescribed suboxone and that he experiences withdrawal if he stops taking suboxone.

39. CCI did not, at any point in Decedent's incarceration, provide Decedent with his prescription suboxone at any point, causing him to go into drug withdrawal.

40. CCI should have provided Decedent with his prescription or provided an adequate alternative treatment. The failure to do so was a breach of the standard of care.

41. Decedent was placed on a thirty-minute detox watch until further notice.

42. CCI did not provide Decedent with appropriate mental health or detox care.

43. CCI's treatment for detox is to essentially throw an inmate into a cell to be alone indefinitely, receiving no medication other than Tylenol.

44. This was the "treatment" given to Decedent, although Decedent received no medication at all.

45. On July 27, 2018, at approximately 3:00 p.m., Decedent was found dead in his cell, hanging from a bedsheet.

46. Decedent's death was ruled a suicide.

47. Decedent was led to commit suicide by lack of appropriate mental health and detox treatment.

48. Defendant received no medical care between his intake on June 23, 2018, and the time of his death on July 27, 2018.

49. Defendant was never seen by a medical doctor, nurse practitioner, physician's assistant, or any similar professional. Defendant Zaloga is the only doctor to provide medical treatment in the Prison and is responsible for the entire CCI medical staff.

50. Defendant was never seen by a nurse.

51. Defendant was never seen by a psychiatrist.

52. Defendant Mallik is the only individual providing psychiatric and detox treatment in the Prison. Decedent became his patient upon intake, and Defendant Mallik never provided care to him. This abandonment of care is a breach of the standard of care.

53. Likewise, Decedent became Dr. Zaloga's patient upon intake, and Defendant Zaloga never provided care to him. This abandonment of care is a breach of the standard of care.

54. It is incumbent that inmates who are in detox receive mental health treatment; this is the standard of care.

55. Despite the fact that Defendants CCI, Zaloga, and Mallik knew Decedent was in detox, they provided no mental health treatment or detox treatment to him.

56. To any extent that Mallik actually provided treatment, this treatment was not adequate and caused Decedent's death.

57. During Decedent's entire incarceration, he remained on a thirty-minute watch.

58. This watch was conducted and monitored by corrections officers ("COs"), not by medical staff.

59. COs at Lackawanna County Prison receive no mental health training from either Defendant County or Defendant CCI.

60. One of the causes of Decedent's death was the failure to be properly monitored by individuals with mental health training.

61. On the day of Decedent's death, the Prison was short-staffed.

62. As a result, the Prison staff did not comply with the thirty-minute watch, and Decedent was not checked on as frequently as he should have been.

63. Furthermore, policy dictated that Plaintiff be placed in a camera cell. He was not placed in such a cell because all of these cells were full and the Prison ran out of cells.

64. Defendant County knew that they did not have enough camera cells to deal with their population of inmates and failed to create more cells.

65. John and Jane Doe nurses and COs were responsible for the monitoring of Decedent; their failure to act and deliberate indifference toward Decedent caused the injuries complained of herein.

66. The actions of all Defendants were undertaken knowingly, intentionally, negligently, recklessly, maliciously, and/or with reckless disregard for Decedent's safety.

67. The actions of all Defendants were undertaken in the absence any valid legal basis.

68. As a direct and proximate result of all Defendants' actions and inactions, Decedent suffered the following damages:

    a. Extreme physical injury and, ultimately, death.

    b. Excruciating pain and suffering

    c. Psychological damage

    d. Lost Wages

    e. Lost Earning Capacity

69. As a direct and proximate result of all Defendants' actions and inactions, Decedent's heirs suffered the following damages:

    a. Loss of consortium of a parent

    b. Loss of financial support from a parent

   c. Emotional pain and suffering

**Policy Averments**

70. Plaintiff incorporates prior paragraphs 1-70 as if the same were set forth herein.

71. The Prison houses, on average, between 800 and 1,000 inmates at any given time.

72. Far more than half of the inmates at any time in the Prison need mental health care and/or substance abuse detox care.

73. Defendants County and CCI contract with Defendant Mallik to provide mental health care and substance abuse detox care at the Prison.

74. Defendant Mallik is the only person responsible for providing this care to all inmates in the Prison.

75. It is the practice of Defendants County, CCI, and Mallik that Defendant Mallik work at the Prison for only nine hours per week.

76. This is grossly insufficient to handle the mental health care and substance abuse detox care for all of the inmates in the Prison.

77. As a result of this understaffing, prisoners in the Prison do not receive adequate mental health treatment or substance abuse detox treatment.

78. This understaffing and lack of time spent with inmates by their only mental health treatment and substance abuse treatment provider is a breach of the standard of care for both CCI and Defendant Mallik.

79. Additionally, Defendants County and CCI fail to adequately train their employees.

80. The only way an inmate at the Prison receives psychiatric care, other than their own report which they often cannot make due to their mental state, is a referral by a nurse or a CO.

81. When inmates are placed on 1:1 watches, in camera cells, on behavioral watches, or on detox restriction, their monitoring is done by COs, not medical providers.

82. These COs are not provided with any mental health, behavioral health, or detox training prior to being given these assignments.

83. Any minimal training which they may be given is inadequate.

84. Therefore, the COs monitoring these inmates cannot properly or effectively do their job of safeguarding the wellbeing of the inmates on watches.

85. Furthermore, these inmates are only seen by nurses on med-pass.

86. If the inmate is not on meds, they are not seen.

87. Furthermore, the limited time utilized in a med pass is insufficient for these nurses to properly or effectively evaluate these inmates.

88. The nurses handling these passes are untrained in mental health.

89. Therefore, the nurses monitoring these inmates cannot properly or effectively do their job of safeguarding the wellbeing of the inmates on watches. This is a breach of the standard of care for these nurses and CCI.

90. The County and CCI are aware of the need for training nurses and COs in mental health due to numerous prior incidents in the prison, including many suicides, but still fail to train.

91. Furthermore, the need for the training is an intuitively obvious moral imperative based on the job duties assigned to these individuals.

12

92. Additionally, reports commissioned by the County have revealed that the levels of staffing of nurses and COs in the Prison is insufficient to safeguard and provide care for the inmates.

93. Despite this, nurses and COs in the Prison remain understaffed.

94. It is Defendant County's practice to continually contract with CCI and Defendant Zaloga for medical care at the Prison.

95. This is despite the fact that routinely and continuously, over the past decade, CCI and Zaloga have proven themselves to be incompetent and incapable of providing such care, leading to numerous deaths and countless injuries over the course of the decade.

96. Nevertheless, the Defendant County continues to contract with Defendants CCI and Zaloga for the sole reason that they keep cost low – ignoring the negative effect on inmates' health and wellbeing.

97. Defendant CCI has a policy and practice of keeping costs low without regard for patient care in an effort to continually receive their contract from Defendant County.

98. It is the policy of Defendant CCI and County to not refer inmates for outside medical care due to cost.

99. Lackawanna County Prison has a far higher rate of suicides than other county jails in Pennsylvania. Defendants County and CCI are aware of this disparity.

100. Despite this knowledge, Defendants County and CCI have failed to implement any policies to safeguard the inmates at the Prison.

101. A June 8, 2016, arbitration award issued against Defendant County indicated that, "correctional officers cannot safely accomplish assigned duties due to…inadequate correctional officer staff to properly supervise the inmate population." Additionally, the "Arbitrator ruled in favor of the correction officer's union 2013 grievance by finding that the prison is an unsafe environment and that a detailed staffing analysis is required". Defendants County and

CCI were aware of this and failed to modify policy to prevent it from happening in the future.

102. During a nine-month period in 2014 three suicides occurred at the Prison. Referencing the above suicides then Sgt. William Shanley made a statement "We don't police the jail the way it should be policed, and it's because you don't have enough (employees) from the top to the bottom. You don't have enough administrators. You don't have enough attendants. You don't have enough Cos. You don't have enough clerical (staff), and you definitely don't have enough nurses." These suicides are directly attributable to the lack of mental health treatment in the prison, which was the direct cause of Decedent's own suicide. Defendants County and CCI were on notice of the need for additional treatment as a result of these suicides.

103. Defendants County and CCI have a policy and practice of not providing withdrawal medication to inmates in detox. They also have a policy and practice of not providing inmates with valid prescriptions which predated their entry into the Prison. These policies and practices caused Decedent's injuries.

104. All of the aforementioned policies and failures to implement policies led to the injuries suffered by Decedent.

## Count One
## 42 U.S.C. §1983
### Estate Plaintiffs v. Defendants County, CCI, O'Malley, Notarianni, Cummings, Zaloga, and Betti

105. Plaintiff incorporates prior paragraphs 1-105 as if the same were set forth herein.

106. Defendants County, CCI, O'Malley, Cummings, Notarianni, Zaloga, and Betti, developed, implemented, approved, and/or maintained a number deficient customs, policies, and/or practices with deliberate indifference, which proximately caused the deprivation of Decedent's rights to be free from cruel and unusual punishment, right to due process, and right to medical treatment

under the 4th, 8th, and 14th Amendment to the United States Constitution.

107. These policies and practices include failure to train, failure to staff, lack of policy, and defective policy, as detailed at length above.

108. Defendants County, CCI, O'Malley, Cummings, Notarianni, Zaloga, and Betti, were final policymakers regarding medical care at the Prison.

109. These policies and/or customs evidenced a reckless or callous indifference to the federally protected rights of Decedent.

## Count Two
## 42 U.S.C. §1983
## Plaintiff v. Defendant Mallik and John and Jane Doe Defendants

110. Plaintiffs incorporate by reference prior paragraphs 1 through 110 and though the same were set forth herein.

111. The conduct and failure to act of Defendant Mallik and the John and Jane Doe Defendants against Decedent were undertaken under color of state law with deliberate indifference and caused the violation of Decedent's rights to be free from cruel and unusual punishment, right to due process, and right to medical treatment under the 4th, 8th, and 14th Amendment to the United States Constitution.

112. Defendants' acted in concert and in conspiracy with one another with knowledge, intent, and malice.

113. Moreover, the conduct engaged in by the Defendants exceeded normal standards of decent conduct and were willful, malicious and outrageous and therefore punitive damages are necessary and appropriate.

114. The actions of Defendants were not objectively reasonable under the present set of facts and circumstances previously articulated herein.

15

115. As a result of Defendants' violations of Decedent's Constitutional rights, Decedent suffered damages including, but not limited to, that he was killed and suffered all damages associated with such an unnatural and premature death.

### Count Three
### Medical Negligence
### Plaintiff v. Defendant Mallik, Defendant Zaloga, and John and Jane Doe Defendants

116. Plaintiffs incorporate by reference prior paragraphs 1 through 116 and though the same were set forth herein.

117. The above mentioned injuries to Decedent were caused by the gross negligence, negligence, carelessness and recklessness of Defendant Mallik, Defendant Zaloga, and John and Jane Doe Defendants acting individually and/or through their agents, servants, and employees acting in the course and scope of their employment, authority or apparent authority.

118. The gross negligence, negligence, carelessness and recklessness of Defendants is described at length above.

119. As a direct result of the gross negligence, negligence, recklessness and carelessness of the above Defendants, Plaintiff suffered physical and psychological injuries and pain and suffering associated with his physical and mental condition.

### Count Four
### Corporate Negligence and Vicarious Liability
### Plaintiff v. Defendants CCI and Zaloga

120. Plaintiffs incorporate by reference prior paragraphs 1 through 120 as though the same were set forth herein.

121. CCI is responsible for health care of all inmates at Lackawanna County Prison.

122. CCI has a duty to retain competent physicians and nurses and adequately staff them.

16

123. CCI has a duty to oversee administration of medical treatment at Lackawanna County Prison.

124. CCI has a duty to promulgate adequate policy to meet the medical needs of inmates at Lackawanna County Prison.

125. Defendants Zaloga and John/Jane Doe(s) are principles, agents, employees, servants, or officers of Defendant CCI.

126. At all relevant times, Defendant Mallik and John and Jane Doe Defendants were acting within the course and scope of their employment as principles, agents, employees, servants, or officers of Defendant CCI.

127. Defendant CCI is vicariously liable for the actions/inactions and commissions/omissions of these Defendants as set forth in the aforementioned paragraphs as though Defendant CCI performed the acts or omissions itself.

128. Defendant CCI is liable for Decedent's injuries due to their defective policies as set forth in full above.

129. As a direct result of the conduct set forth above, Decedent has suffered damages, both physical and psychological, more fully described in the preceding paragraphs.

WHEREFORE, Plaintiffs request damages as follows:

130. Plaintiff incorporates by reference prior paragraphs 1 through 130 as though the same were set forth herein.

131. An amount to be determined at trial, including punitive damages, except as to the municipal defendants, plus interest;

132. For Plaintiff's attorney's fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b);

133. For costs and disbursements incurred in this action; and

134. Any such other relief as the Court may deem just and proper.

135. Plaintiff also hereby requests the following injunctive relief from the Court:

    a. An order requiring that Defendant County cease contracting with Defendant CCI and/or Defendant Zaloga for medical care at the Prison.

    b. An order requiring that Defendant County and/or Defendants CCI and Zaloga retrofit the Prison to create more camera cells, more medical facilities, appropriate mental health facilities, and appropriate detox facilities.

    c. An order requiring that Defendant County and/or Defendants CCI and Zaloga appropriately staff nurses and COs in the Prison.

    d. An order requiring that Defendant County and/or Defendants CCI and Zaloga hire a full time psychiatrist to provide mental health and detox treatment in the Prison.

## Jury Demand

136. Plaintiffs incorporate by reference prior paragraphs 1 through 136 as though the same were set forth herein.

137. Plaintiffs demand a jury trial on all issues.

Respectfully Submitted:

*/s/ Matt C.*

Matthew T. Comerford, Esq.
matt@comerfordparkins.com
Id: 89220

19

/s/ Curt M. Parkins
Curt M. Parkins, Esq.
curt@comerfordparkins.com
Id: 310571
Attorneys for Plaintiff
204 Wyoming Avenue
Scranton, PA 18503
Phone: 570-880-0777
Fax: 570-880-0476